UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ROSE SHEIKH,

**MEMORANDUM & ORDER**

03-CV-6326 (NGG)
05-CV-4718 (NGG)

Plaintiff,

-against-

CITY OF NEW YORK, POLICE
DEPARTMENT; CITY OF NEW YORK;
NEW YORK CITY DEP'T OF
CORRECTIONS; and DETECTIVE JOHN
BURGESS, in his capacity as an officer of
the POLICE DEP'T OF THE CITY OF NEW
YORK and Individually,

Defendants.

-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Rose Sheikh ("Plaintiff" or "Sheikh") was arrested on four occasions between

December 14, 1999 and June 18, 2002.  The first arrest resulted in a guilty plea.  All other

charges against Plaintiff were ultimately dismissed.  Plaintiff  brought these consolidated actions

under 42 U.S.C. § 1983 against Detective John Burgess ("Burgess") and the City of New York

("the City"), claiming that she was falsely arrested on December 10, 2000 and June 18, 2002 in

violation of her rights under the Fourth and Fourteenth Amendments and that she was

maliciously prosecuted.[1]   She also alleges that at the June 18, 2002 arrest, she was not informed

of the accusations against her in violation of the Sixth Amendment.  Plaintiff further claims that

while she was incarcerated at Rikers Island for several days in December 2000, she was

---

[1] Plaintifff's first Complaint names as defendants New York City Police Department, the City of New York, the
New York City Department of Corrections, and Burgess, individually and in his official capacity as a police officer.
(Compl., No. 03-CV-6236 (NGG) ("2003 Compl.").)  Her second Complaint names only Burgess, in his individual
and official capacity, as Defendant.  (Compl., No. 05-CV-4718 (NGG) (MDG) ("2005 Compl.").)

1

unconstitutionally strip-searched.   In addition to her Section 1983 claims, Plaintiff also brings

state-law tort claims of assault and battery and intentional infliction of emotional distress.

Before the court is Defendants' Motion for Summary Judgment on all claims.  (No. 05-

CV-4718 (NGG) (MDG), Docket #15.)  For the reasons stated below, Defendants' Motion is

granted.

## I.   Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists.  See

Fed. R. Civ. P. 56(c); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert.

denied, 524 U.S. 911 (1998).  The burden of showing the absence of any genuine dispute as to a

material fact rests on the party seeking summary judgment.  See Adickes v. S.H. Kress & Co.,

398 U.S. 144, 157 (1970).  In assessing the record to determine whether there is a genuine issue

to be tried as to any material fact, the court is required to resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[w]here the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is

'no genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986).  A moving party "may obtain summary judgment by showing that little or no

evidence may be found in support of the nonmoving party's case."  Gallo v. Prudential

Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994).

## II.   Factual Background

### A.  December 14, 1999 Arrest and Guilty Plea

Burgess arrested Plaintiff on December 14, 1999 based on a complaint of criminal

impersonation.  According to a police complaint report dated December 6, 1999, Jomarie Miello

made a verbal, in-person complaint, stating that "Rose Capitano"[2] had used Miello's New York license and social security card to establish a credit line.[3]  (Hanlon Decl. Ex. D.[4])  Burgess was assigned to investigate the complaint and interviewed Miello the same day.  (Gilliam Decl. Ex. KK (Burgess Dep. 72-74).)

According to Burgess's follow-up report, Miello stated the following: 1) on November 11, 1999 she received a letter from a collection agency stating that there was a checking account in her name at Dime Savings Bank with a balance of $23,881.21, with Oasis listed as the company name; 2) she never had an account with Dime Savings Bank; 3) she knew a woman named Rose Capitano who owned the Oasis company; and 4) she had been at Rose Capitano's house at 74 Redwood Loop and had lost her pocketbook with her Social Security card and New York State driver's license.  (Hanlon Decl. Ex. F.)  Miello never gave a written statement of complaint.  (Burgess Dep. 72-73.)

Burgess interviewed two individuals affiliated with the bank who confirmed Miello's allegations.  On December 7, he spoke with Edward Wilson, who confirmed that there were two accounts in Miello's name, with the mailing address listed as 74 Redwood Loop, and the accounts were opened by Diana Quinlan, an account executive. (Hanlon Decl. Ex. G.)  On December 13, Burgess spoke with Quinlan, who confirmed that Miello had opened both accounts, that she filled out the paperwork for the business account on May 13, 1998, and that Quinlan had met "Miello" three or four times since the accounts were opened.  (Hanlon Decl.

---

[2] Plaintiff testified that her given name was Rose Capitano.  (Gilliam Decl. Ex. JJ (Sheikh Dep. 21).)

[3] The parties have not raised any evidentiary issues with respect to the admissibility of the police reports.  Out of an abundance of caution, the court notes that the police reports contain statements allegedly made to officers prior to Plaintiff's arrests.  These statements are not offered for the truth of the matter asserted but for the purpose of establishing whether there was probable cause to arrest Plaintiff.  As they are not offered for the truth of the matter asserted, they do not constitute hearsay as defined in Rule 801(c) of the Federal Rules of Evidence.  See Richards v. City of New York, No. 97-CV-7990 (MBM), 2003 WL 21036365, at *6 (S.D.N.Y. May 7, 2003).

[4] Where the parties have submitted the same document as an exhibit, the court cites to the Declaration submitted by Defendants' counsel.

Ex. H.)  Burgess met with Quinlan at the Staten Island Library on December 14, and Quinlan

signed and dated a photo array, identifying photo 6 as "Miello."  (Hanlon Decl. Ex. I; Hanlon

Decl. Ex. J.)  Burgess testified that he did not recall the source of the photo used in the array.

(Burgess Dep. 114.)

On December 14, 1999, Burgess arrested Plaintiff at the 122nd Precinct.  (Gilliam Decl.

Ex. M.)  His report states that Sheikh was accompanied by her attorney at the precinct when she

was arrested and charged.  (Gilliam Decl. Ex. L.)  Attached to the arrest report is a copy of a

letter to Miello dated November 10, 1999 that attempted to collect the balance on Miello's

account at the Dime Savings Bank.  (Gilliam Decl. Ex. M.)  Following Plaintiff's arrest at the

precinct, Plaintiff was placed in handcuffs.  (Burgess Dep. 187.)  The same day, Burgess swore

to and signed an affidavit that charged Plaintiff with two counts of criminal impersonation.

(Hanlon Decl. Ex. L; Burgess Dep. 90-92).)

On May 24, 2000, Plaintiff pled guilty to criminal impersonation in the second degree, a

class A misdemeanor, and admitted that she impersonated Jomarie Miello to open a credit

account at the Dime Savings Bank.  (Hanlon Decl. Ex. C.)  She was sentenced to three years of

probation and restitution of one thousand dollars plus ten percent interest.  (Gilliam Decl. Ex. O.)

**B.  December 2000 Arrests**

Burgess arrested Plaintiff again in December 2000 after investigating a second complaint

from Jomarie Miello that Plaintiff had impersonated her.  Miello made a complaint on November

30, 2000 that Plaintiff had impersonated her to obtain a loan from another bank on November 20,

1998. (Hanlon Decl. Ex. N.)  Burgess was assigned to the case and interviewed Miello in person

at the precinct that day.  (Id.)  According to Burgess's report, Miello told him that: 1) she

received a call that day from her bank, notifying her that her account was being frozen by

Victory State Bank; 2) she went to Victory State Bank and met Judy Klapper, who told her that someone applied for a loan as "Jomarie Miello" and never paid it back; and 3) that Klapper showed her a photograph of the person who took the loan. (Hanlon Decl. Ex. O.) The report states that Miello brought the photograph with her to the precinct and identified the person pictured as "Rose Sheikh/Falb." (Id.) Burgess interviewed Klapper by phone, and Klapper corroborated Miello's account of what had happened. (Hanlon Decl. Ex. P.)

At approximately midnight on December 10, 2000, Burgess, accompanied by Detective William Grace, went to Plaintiff's home at 74 Redwood Loop, where Grace arrested Plaintiff for second-degree criminal impersonation and third-degree grand larceny. (Hanlon Decl. Ex. Q; Burgess Dep. 197-98; Gilliam Decl. Ex. JJ (Sheikh Dep. 120-21).) Burgess testified that he was the "arresting officer," but Grace actually made the arrest and filled out the paperwork. (Burgess Dep. 199.) Plaintiff testified in her deposition that Burgess "showed up" in her bedroom when he came to arrest her and "very loudly" stated, "Do you remember me." (Sheikh Dep. 120-21, 131).

The district attorney's office deferred prosecution. In an undated form, the district attorney's office checked boxes marked "police provide additional witnesses/information" and "other," next to which was noted that the arresting officer was not the assigned officer and had not contacted the Staten Island Savings Bank or filled out complaint follow-up reports. (Hanlon Decl. Ex. R.) The form noted that the Staten Island Savings Bank was closed because "it is a Sunday," and provided instructions to the arresting officer to contact a representative of the Staten Island Savings Bank and to obtain the other reports. (Id.)

The police records indicate, and Plaintiff does not dispute, that Burgess arrested Plaintiff for criminal impersonation and grand larceny on December 19, 2000 at the 122nd Precinct.

(Hanlon Decl. Ex. S.)  Plaintiff's criminal defense attorney was present when Plaintiff surrendered to the police.  (Hanlon Decl. Ex. S.)  Burgess testified that Sheikh was placed in handcuffs following her arrest.  (Burgess Dep. 188.)  After Burgess completed the paperwork for Plaintiff's arrest, Plaintiff was subsequently transferred to another precinct for central booking.  (Burgess Dep. 171-173; Hanlon Decl. Ex. T.)

Following this arrest, Plaintiff was transported to Rikers Island, where she remained for six days.[5]  (Sheikh Dep. 149-58, 212.)  At Rikers Island, Plaintiff was repeatedly subjected to "a violated search by female officers," and upon entering the corrections facility, a female officer asked her to squat for a visual cavity search.  (See id. at 216, 149-56.)  She testified that she was also subject to a physical cavity search by an officer wearing gloves.  (Id. at 156.)  When asked which corrections officers performed the searches, she also testified that she "had no clue," stating only that "two Afro-American ladies" conducted one of the searches.  (Id. at 170.)

### C.  Indictment and Other Proceedings in 2001

On May 31, 2001, Plaintiff was indicted by a grand jury on charges arising out of her arrests in December 2000.  (Hanlon Decl. Ex. V.)  Burgess testified before the grand jury. (Burgess Dep. 174.)  The indictment was for one count of third-degree grand larceny, for stealing property from Victory State Bank between November 20, 1998 and August 31, 2000, and for two counts of second-degree forgery, arising out of Plaintiff's applications for a loan and an overdraft checking account on November 20, 1998.  (Id.)  The same day, a bench warrant was issued for Sheikh's arrest (Hanlon Decl. Ex. W), but Plaintiff was not arrested until June 18, 2002.

---

[5] Plaintiff testified in her deposition that she was arrested only once in December 2000, and that she was transported the same day to Riker's Island, where she remained until December 22.  (Sheikh Dep. 121, 148-49, 216.)  In her Response to Defendants' Rule 56.1 Statement of Undisputed Facts and her Memorandum in Opposition, Plaintiff affirmatively contends that Burgess arrested her on December 10 and December 19, 2000, and submits documentation of both arrests as exhibits. (Pl. Mem. Opp. 9-12 (describing circumstances of arrests on December 10 and 19 and relying on police documentation as supporting exhibits).)  The court construes these ambiguities in the light most favorable to Plaintiff and thus assumes that Plaintiff was arrested twice in December 2000 and subsequently transferred to Riker's Island.  Any differences in the dates of the arrests are not material.

On June 6, 2001, the prosecutor's office issued voluntary disclosure materials to Sheikh, which included a bill of particulars, copy of the photo array and arrest warrant, and notice that the prosecution intended to offer the photo identification as evidence. (Gilliam Decl. Ex. V.)

A second arrest warrant was issued on December 7, 2001 (Hanlon Decl. Ex. AA.), but Plaintiff was never arrested pursuant to this warrant. That day, Plaintiff had been found to have violated her probation. (Gilliam Decl. Ex. FF.) Previously, Sheikh's probation officer had issued a report alleging that Sheikh's whereabouts were unknown, that she failed to make restitution as required by her sentence, and that she failed to report to her probation officer. (Hanlon Decl. Ex. X.) The arrest warrant indicated that Sheikh was charged with criminal impersonation, was convicted of criminal impersonation and sentenced to restitution and parole, and failed to appear for her criminal proceedings. (Hanlon Decl. Ex. AA.)

On December 21, 2001, unspecified criminal charges against Sheikh were dismissed by motion of the district attorney's office, because "the facts outlined in this case were either incorporated or somehow covered" by Sheikh's previous sentence of probation and restitution.[6] (Gilliam Decl. Ex. W.) The proceedings were under a different docket number than the May 31, 2001 indictment, and the transcript does not reference that indictment. (Id.)

**D. June 18, 2002 Arrest**

Plaintiff was arrested for the fourth time on June 18, 2002, pursuant to the arrest warrant issued in conjunction with the May 31, 2001 indictment. Plaintiff testified that while she was at the civil court that morning on an unrelated matter, Burgess approached her and asked to speak

---

[6] Although the certified court transcript indicates that the proceedings occurred on December 21, 2001, and the docket number of the criminal case begins with "2001," it is possible that the proceedings occurred on December 21, 2000. Plaintiff testified that the charges were dismissed on December 22, 2000, the day she testified she was released from Riker's Island (Sheikh Dep. 216), and Sheikh's attorney stated at the proceedings that Sheikh was brought over by "Corrections." (Gilliam Decl. Ex. W.) Whether the charges were dismissed in 2000 or 2001, however, is not material, because either date is after Plaintiff's December 2000 arrests and prior to the June 2002 arrest.

to her outside. (Sheikh Dep. 232.) Plaintiff was subsequently arrested outside the civil court by Police Officer Anthony Palladino from the Probation Unit, who was accompanied by Probation Officers Rodriguez and March. (Hanlon Decl. Ex. CC; Gilliam Decl. Ex. NN; Hanlon Decl. Ex. DD (March Dep. 43); Hanlon Decl. EE (Palladino Dep. 49).) Palladino testified that Plaintiff was arrested pursuant to the May warrant for grand larceny, not the December 2001 warrant for criminal impersonation which he stated had been "cleared." (Palladino Dep. 108.) The Arrest Report indicates an active warrant pursuant to the May 31, 2001 indictment. (Hanlon Decl. Ex. CC.) Following the arrest, Plaintiff was arraigned at Richmond Criminal Court and transferred to Rikers Island, where she remained until October 11, 2002.[7] (Gilliam Decl. Ex. EE.)

### E. Revocation of Parole and Dismissal of Charges from the Indictment

While at Rikers Island, Plaintiff was in proceedings on two separate matters: violation of probation from her sentence in May 2000 and the criminal charges from the May 2001 indictment. (Gilliam Decl. Exs. EE, FF.) On September 5, Plaintiff's probation was revoked and she was sentenced to six months in jail for violation of probation. (Hanlon Decl. Ex. DD.) On October 3, the charges from the May 2001 indictment were dismissed. (Gilliam Decl. Ex. EE; Gilliam Decl. Ex. DD (moving to dismiss on grounds that prosecution barred due to previous guilty plea to criminal impersonation).) Plaintiff was released from Rikers Island on October 11, 2002. (Gilliam Decl. Ex. EE.)

### III. Analysis

The court addresses Plaintiff's Section 1983 claims against Burgess and the City before turning to Plaintiff's state-law claims.

---

[7] Various records from the Department of Corrections provide differing dates of Plaintiff's admission – June 18, June 19, and June 20. Defendant does not dispute Plaintiff's assertion, however, that she was admitted to Riker's Island on June 18, 2002. (Def. 56.1 Statement ¶ 47.)

### A.  Section 1983 Claims Against Burgess

Plaintiff alleges that Burgess falsely arrested her in violation of her Fourth and Fourteenth Amendment rights, maliciously prosecuted her, and violated her rights under the Sixth Amendment.  These claims cannot survive summary judgment.

### 1.     False Arrest

Plaintiff alleges that she was falsely arrested on December 10, 2000[8] and June 18, 2002.  (2003 Compl. ¶ 27; 2005 Compl.  ¶¶ 22-28.)  These claims fail because each arrest was supported by probable cause.   "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).  "[P]robable cause to arrest constitutes justification and is a complete defense to an action for false arrest."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks omitted).

Probable cause to arrest exists when an officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).   Moreover, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest."  Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  Probable cause is to be assessed on an objective basis.  Id.  Whether the suspect was later acquitted of the charges for which she was arrested is "irrelevant to the validity of the arrest."  Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).   The existence of

---

[8] The 2003 Complaint alleges an arrest "on or about December 12, 2000," but the record demonstrates and the parties do not dispute that the arrest was on December 10, 2000.  (Hanlon Decl. Ex. Q.)

probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time of the arrest*." <u>Zellner</u>, 494 F.3d at 368 (<u>quoting</u> <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152 (2004) (emphasis added).) "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." <u>Id</u>.

### a. The December 10, 2000 Arrest

"It is well-settled that police officers have probable cause to arrest if they receive information from a complaining victim or other witness whom they reasonably believe to be telling the truth." <u>Little v. City of New York</u>, 487 F. Supp. 2d 426, 239 (S.D.N.Y. 2007); <u>see also</u> <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 163 (2d Cir. 2002) (collecting cases); <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity.") (internal citations omitted). Specifically, "[i]nformation furnished by a single complainant can establish probable cause when the information comes from a victim who provides specific details of a crime." <u>Daniels v. City of New York</u>, No. 03-CV-809 (GEL), 2003 WL 22510379, at *3 (S.D.N.Y. Nov. 5, 2003).

Courts have thus dismissed false arrest claims where the plaintiff was arrested based solely on the complaint of one purported victim and the plaintiff failed to allege facts suggesting that the victim should have appeared unreliable to a reasonable police officer. <u>See</u>, <u>e.g.</u>, <u>Breitbard v. Mitchell</u>, 390 F. Supp. 2d 237, 245 (E.D.N.Y. 2005); <u>Daniels</u>, 2003 WL 22510379, at *4. Moreover, once a police officer has a reasonable basis for believing there is probable cause to arrest, he or she "is not required to explore and eliminate every theoretically plausible claim of innocence for making an arrest." <u>Ricciutti v. New York City Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997).

Here, probable cause existed for plaintiff's arrest on December 10, 2000 because, as detailed above, it was based on information Burgess received from interviewing both the victim, Jomarie Miello, and Klapper, who corroborated Miello's account of what had happened. (Hanlon Decl. Exs. N, O, P.)  Given the facts known to Burgess at the time of Plaintiff's arrest, see Zellner, 494 F.3d at 368, a reasonable officer would have concluded that Plaintiff had committed an offense.

That Burgess did not obtain any signed, written statements from Miello or Klapper prior to arresting Plaintiff does not negate the existence of probable cause, absent other indicia that Miello and Klapper were unreliable.  While an unsigned complaint in combination with other indicia of unreliability could support the conclusion that probable cause was lacking, see, e.g., Cornett v. Brown, No. 04-CV-0754 (DGT) (LB), 2007 WL 2743485 (E.D.N.Y.  Sept. 17, 2007), such circumstances are not present here.  In Cornett, for example, where a victim waited three weeks to file a complaint of trespass, and the police arrested the suspect three months later after no additional investigation, the court found a lack of probable cause.  2007 WL 2743485, at *6. Here, Burgess stated that he met with Miello on November 30, the same day that Miello received a call from her bank about her account being frozen.  He also called Klapper that day, and Plaintiff was arrested eleven days later.

Moreover, that Detective Gates, not Burgess, made the arrest and completed the accompanying paperwork does not change the probable cause analysis.  Under the "collective or imputed knowledge doctrine," an arrest is permissible when the arresting officer's authority to arrest may be based on facts "known by other law enforcement officials initiating or involved with the investigation."  Zellner, 494 F.3d at 369 (internal citation omitted).

Plaintiff has put forth no evidence to dispute the facts alleged in Burgess's reports.[9]  She

has submitted no evidence that Burgess should have questioned the credibility of Miello or

Klapper, other than that neither provided signed, written statements of complaint, which as

discussed above, does not by itself suggest a reason to doubt the veracity of either individual.

Plaintiff supports her claim only by arguing that the district attorney's office declined to

prosecute the December 10 arrest and directed the arresting officer to obtain additional

information.  (Pl. Mem. Opp. 10.)  The district attorney's decision to defer prosecution, however,

has no bearing on whether probable cause existed at the time of arrest.  Zellner, 494 F.3d at 368.

### b.  The June 18, 2002 Arrest

An arrest made pursuant to an arrest warrant issued by a neutral magistrate gives rise to a

presumption of probable cause.  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

A plaintiff who argues that a warrant was based on less than probable cause "faces a heavy

burden."  Id.  She must make a "substantial preliminary showing" that the officer "knowingly

and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit

and that the allegedly false statement was 'necessary to the finding of probable cause.'"  Id. at

870-71.  "In the face of a valid warrant where there is no showing of fraud, misrepresentation or

falsification of evidence, there is no claim for false arrest, either under New York law or as a

---

[9] Plaintiff argues in her Memorandum of Law that probable cause did not exist for her arrest on December 14, 1999.
(Pl. Mem. Opp. 5-9.)  Plaintiff has not alleged in either Complaint that she was falsely arrested on December 14,
1999; and moreover, any such claim would be barred, because she later pled guilty to criminal impersonation, the
offense for which she was arrested on that date.  Because that sentence was never invalidated, any claim for false
arrest under § 1983 is barred by Heck v. Humphrey.  512 U.S. 477, 486-87 (1994) (holding that in a suit for
damages caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff
must prove that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, [or]
declared invalid by a state tribunal."); Dudley v. Pendagrass, No. 06-cv-216 (RJD) (LB), 2008 WL 4790489, at *5
(Oct. 31, 2008).  Moreover, even if the sentence had been invalidated, the Second Circuit has held that a conviction
for or guilty plea to the crime for which an individual is arrested is a defense to an action asserting that the arrest
was made without probable cause, barring recovery.  See Cameron v. Fogarty, 806 F.2d 380, 388-89 (2d Cir. 1986);
Rivera v. City of Yonkers, 470 F. Supp. 2d 402, 407 (S.D.N.Y. 2007) (citing Thomas v. Roach, 165 F.3d 137, 144
(2d Cir. 1999)).

matter of Federal Civil Rights." <u>Mason v. Village of Babylon</u>, 124 F. Supp. 2d 807, 815 (E.D.N.Y. 2000).

Plaintiff concedes that her arrest on June 18, 2002 was pursuant to a valid warrant. (2005 Compl. ¶ 8.) That warrant was issued in conjunction with Plaintiff's grand jury indictment on May 31, 2001 for larceny and forgery. (Hanlon Decl. Ex. CC; Hanlon Decl. Ex. W.) Officer Palladino, the arresting officer, testified that he arrested Plaintiff pursuant to the May 2001 warrant for grand larceny, not the December 2001 warrant, which had been "cleared." (Palladino Dep. 108.) Viewing the facts in the light most favorable to Plaintiff, assuming that the December 2001 warrant had been recalled prior to the arrest, it is undisputed that the May 2001 warrant was valid. Moreover, Plaintiff's contention that there are disputed issues of material fact regarding the identity of the arresting officer is irrelevant, because the May 2001 warrant for Plaintiff's arrest was directed "[t]o any Police Officer of the City of New York." (Hanlon Decl. Ex. W.) Even assuming that Burgess was present at and brought about Plaintiff's arrest on June 18, the probable cause inquiry centers on the validity of the warrant, not the identity of the arresting officer. Therefore, the warrant gives rise to a presumption of probable cause.

Plaintiff has not provided any evidence that the May 2001 warrant was issued on the basis of "fraud, misrepresentation, or falsification" to rebut this presumption of probable cause. While Burgess testified at the grand jury proceedings (Burgess Dep. 174), Plaintiff has provided no evidence that Burgess gave false or misleading testimony. Moreover, while the charges from the indictment were ultimately dropped because the conduct for which Plaintiff was arrested was included in her previous guilty plea, Plaintiff has not even alleged, or provided any evidence, that Burgess was aware at any time of the existence of the previous guilty plea, let alone the nature of

the conduct it covered. Therefore, Plaintiff has not rebutted the presumption that her arrest

pursuant to a valid warrant was supported by probable cause.

Accordingly, the court grants summary judgment to Defendants on Plaintiff's false arrest

claims.

## 2.      Due Process

Plaintiff alleges that in falsely arresting her, Burgess caused a "deprivation of life, liberty,

and property without due process in violation of the Fourth and Fourteenth Amendments."

(2003 Compl. ¶ 43.)  Due process is violated where officers act in bad faith and make an arrest

without probable cause.  United States v. McDermott, 918 F.2d 319, 325 (2d Cir. 1990).

Because the court concludes that the arrests at issue were supported by probable cause, this claim

is without merit.  "Where, as here, probable cause has been clearly established, there can be no

claim for denial of either the procedural or substantive right to due process."  Harris v. County of

Nassau, No. 07-CV-1866 (LDW), 2008 WL 4425284, at *5 (Sept. 29, 2008) (citing cases).

Accordingly, summary judgment is granted to Defendants.

## 3.      Malicious Prosecution

Plaintiff alleges that Burgess maliciously prosecuted her.  (2003 Compl. ¶¶ 41-43; 2005

Compl. ¶ 15, 6.)  To prevail on a malicious prosecution claim under § 1983, a plaintiff must

show a deprivation of her liberty under the Fourth Amendment, such as detention following

arraignment, and establish the elements of a state law malicious prosecution claim.  Fulton v.

Robinson, 289 F.3d 188, 195 (2d Cir. 2002); Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997).

Under New York law, a plaintiff must demonstrate: "(1) that the defendant commenced or

continued a criminal proceeding against him; (2) that the proceeding was terminated in the

plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the

proceeding was instituted with malice." <u>Kinzer v. Jackson</u>, 289 F.3d 188, 143 (2d Cir. 2003). The court grants summary judgment to Defendants, because Plaintiff has not demonstrated that the proceedings against her lacked probable cause.

The existence of probable cause is a complete defense to a claim for malicious prosecution. <u>Johnson v. City of New York</u>, No. 05-CV-7519 (PKC), 2008 WL 4450270, at *9 (S.D.N.Y. Sept. 29, 2008) (citing <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995). Moreover, a grand jury indictment creates a presumption of probable cause for the purpose of a malicious prosecution claim. <u>Savino v. City of New York</u>, 331 F.3d 63 (2d Cir. 2003). To rebut this presumption, Plaintiff "must establish that the *indictment* was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." <u>McClellan v. Smith</u>, 439 F.3d 137, 147 (2d Cir. 2006) (quotation omitted) (emphasis added). Courts have held that no reasonable juror could find that a plaintiff overcomes the presumption of probable cause arising from an indictment "[i]n the absence of any evidence that the defendants – or any other officers or prosecutors – acted in bad faith or gave perjured evidence before the grand jury or without any other exculpatory evidence, or documentary evidence of any kind . . . ." <u>Rivas v. Suffolk County</u>, 326 F. Supp. 2d 355, 363 (E.D.N.Y. 2004).

Plaintiff was indicted by a grand jury on May 31, 2001 for the charges arising out of the December 2000 arrests, giving rise to a presumption of probable cause. To rebut this presumption, Plaintiff contends that Burgess "created and perpetuated false information" for Plaintiff's prosecution. (Pl. Mem. 15.) She has provided no evidence in support, however, other than repeating her arguments that probable cause did not exist to support the arrests and that the charges against Plaintiff were ultimately dismissed. The inquiry, however, is not whether probable cause existed for the arrest, but for the proceedings:

> [t]he presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.

Rothstein v. Carriere, 373 F.3d 275, 283 (2d Cir. 2004) (quoting Colon v. City of New York, 60 N.Y.2d 78, 82 (1983)).

That Burgess loudly stated, "Do you remember me" when he came to Plaintiff's house at midnight on December 10, 2000 and that he testified at the grand jury proceedings does not establish that Burgess made an incomplete statement of facts either to the grand jury or to the District Attorney, that he misrepresented or falsified evidence, or that he otherwise acted in bad faith. Id. As noted above, while the charges arising out of the indictment were ultimately dismissed because the conduct was covered by Plaintiff's previous guilty plea, Plaintiff has not alleged or provided any evidence that Burgess was aware of the existence and scope of the previous plea. Nor is it relevant that Burgess may have brought about Plaintiff's arrest on June 18, 2002; that arrest occurred after the grand jury indictment, pursuant to the valid May 2001 warrant, and prior to the dismissal of the charges in the indictment. Plaintiff cannot "rebut the presumption of probable cause with mere 'conjecture' and 'surmise'. . . ." Savino, 331 F.3d at 73. The court therefore finds that Plaintiff has not met her burden to rebut the presumption of probable cause arising out of the indictment.

Therefore, summary judgment is granted to Defendants on the malicious prosecution claims.

### 4.     Sixth Amendment

Plaintiff alleges regarding her June 18, 2002 arrest that Burgess deprived her of the right to be informed of the nature and cause of the accusation against her, pursuant to her rights under the Sixth and Fourteenth Amendments. (2005 Compl. ¶ 25.) The parties did not address this

claim in their memoranda of law.  After providing notice to Plaintiff and an opportunity to

present evidence and arguments in opposition (Docket #23), the court grants summary judgment

to Defendants on this claim.  See NetJets Aviation, Inc. v. LHC Communications, LLC, 537 F.3d

168, 178 (2d Cir. 2008) (district court may, on appropriate record, sua sponte grant summary

judgment after providing notice and opportunity to present evidence and arguments in

opposition).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . .

be informed of the nature and cause of accusation."   U.S. Const. amend. VI.  The Amendment is

a statement of the "rights necessary to a full defense," Faretta v. California, 422 U.S. 806, 818

(1975), and its scope is limited to criminal prosecutions, Texas v. Cobb, 532 U.S. 162, 173 n.3

(2001).  The Second Circuit has considered the right to be informed of the nature and cause of

accusation in the context of whether an indictment is sufficiently specific.  See, e.g., United

States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000).

While the Sixth Amendment right to be informed of the nature of the accusation is

limited to criminal prosecutions, the court does not address whether damages under Section 1983

are available for a violation of this right,[10] because Plaintiff has shown no factual basis for a

constitutional violation.  Here, Plaintiff has brought her claim of a Sixth Amendment violation

only against Burgess, and her Complaint concedes that she was arrested pursuant to a valid

warrant.  (2005 Compl. ¶ 8.)  Prior to her arrest on June 18, 2002, Plaintiff had been indicted by

the grand jury and had received voluntary disclosure materials from the prosecution that included

a bill of particulars, a copy of the arrest warrant, and copies of the photo array the prosecution

intended to use as evidence.  (See Hanlon Decl. Ex. V; Gilliam Decl. Ex. V.)  Contrary to

---

[10] The court has found numerous cases dismissing such claims for failure to state a constitutional violation, but those
cases did not address the availability of damages had a violation been established.

Plaintiff's contention, that the charges were eventually dismissed has no bearing on whether

Plaintiff was informed of the charges against her.  (Pl. Letter, Nov. 26, 2008) (Docket #24.)

While Plaintiff testified at her deposition that she did not know why she was being arrested on

June 18, 2002 (see Sheikh Dep. 235), she has also provided as exhibits the voluntary disclosure

form she received from the prosecution prior to that arrest.  (Gilliam Decl. Ex. V.)  There is

simply no basis for a claim that Plaintiff was not informed of the nature of the charges against

her.  Summary judgment is therefore granted to Defendants on this claim.[11]

### 5.        Qualified Immunity of Detective Burgess

Qualified immunity "'shields police officers acting in their official capacity from suits for

damages . . . unless their actions violate clearly established rights of which an objectively

reasonable official would have known.'"  Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006)

(quotation omitted).  Having concluded that Burgess did not violate Plaintiff's constitutional

rights, the court need not reach the question of qualified immunity.

### B.  Section 1983 Claims Against the City

Plaintiff makes numerous claims under Section 1983 against the City: first, that the City,

through its Police Department and its employees, subjected her to false arrest, violated her due

process rights, and maliciously prosecuted her (2003 Compl. ¶¶ 5, 29, 40, 46); and second, that

the City, through its Department of Corrections and its employees, unnecessarily strip-searched

---

[11] While Plaintiff's arrest on June 18, 2002 occurred after the government had commenced prosecution, the court notes that in cases concerning arrests made without a warrant and prior to an indictment, courts have found that an arresting officer has no constitutional obligation to inform an arrestee of the charges against her, because the Sixth Amendment was not yet implicated.  See Kladis v. Brezek, 823 F.2d 1014, 1018 (7th Cir. 1987); Ochoa v. City of West Haven, No. 08-CV-0024 (WWE), 2008 WL 4426960, at *3 (D. Conn. Sept. 26, 2008) ("[T]o the extent that plaintiffs rely on the Sixth Amendment protection to 'be informed of the nature and cause of the accusation,' this protection does not mandate that a police officer inform an arrestee of the precise reason for the arrest or investigation at that time); Rivera v. Granucci, Civ. No. N-87-480 (JAC), 1993 WL 76202, at *6 (D. Conn. Mar. 12, 1993) (finding no right to have an interpreter present at the arrest because no Sixth Amendment right to be informed of the charges at the time of arrest); Carter v. Bartle, Civ. A. No. 89-8921, 1990 WL 99176, at *2 (E.D. Pa. July 12, 1990) (dismissing claim as frivolous).

her, forced her to undergo a "vaginal exam against her wishes," and required her to shower "in plain view of a male corrections officer" when she was detained at Riker's Island in December 2000, (2003 Compl. ¶¶ 47).[12] Plaintiff further alleges that the City and its departments maintain policies, practices, and customs including 1) "failure to properly supervise police officers," and 2) failure to "enforce policies and processes with respect to the questioning and arrest of suspects." (2003 Compl. ¶ 38.) For the reasons below, the court grants summary judgment to Defendants on the municipal liability claims under § 1983.

A municipality may not be held liable under § 1983 on the basis of respondeat superior. Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978). Rather, a plaintiff must establish both a violation of her constitutional rights and that the violation was caused by a municipal policy or custom. See id. at 690-91; Bd. of the County Comm'rs v. Brown, 520 U.S. 400 (1997) (the policy or custom must be the actual "moving force" behind the alleged wrongs). Where there has been no underlying constitutional violation, a municipality cannot be held liable. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

To establish a municipal policy or custom, a plaintiff must establish one of the following: 1) a formal policy, promulgated or adopted by the City, Monell, 436 U.S. at 690; 2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986); or 3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a "custom or usage" and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials, City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

---

[12] As the New York City Police Department and Department of Correction are not suable entities, see New York City Charter, Ch. 17, § 396, the court construes Plaintiff's claims against the municipal departments as claims against the City.

If liability is based on failure to train or supervise, a plaintiff must show "deliberate indifference to the rights of those with whom the municipal employees will come into contact," City of Canton v. Harris, 489 U.S. 378, 388 (1989); Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007).  To survive summary judgment on a claim of failure to supervise, a plaintiff must establish that "a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious' . . . and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction."  Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)).

Conclusory allegations of municipal liability will not defeat a motion for summary judgment on a Monell claim.  Kalu v. City of New York, No. 06-CV-3791 (LAK), 2008 WL 4344592, at *6 (S.D.N.Y. Sept. 16, 2008); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").   In addition, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti, 941 F.2d at 123; see also City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

1.      **Municipal Liability for False Arrest, Due Process, and Malicious Prosecution**

To maintain a claim for damages against the City under Section 1983, Plaintiff must first prove an underlying constitutional violation.  Heller, 475 U.S. at 799; see also Ricciuti, 124 F.3d at 132 (noting that a claim of inadequate supervision under 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised). Plaintiff has not shown that Detective Burgess – or any other police officers – falsely arrested her, violated her right to due process, or maliciously prosecuted her.

Even if she had established a constitutional violation, Plaintiff has not, after considerable discovery, identified any actual policies or customs of the New York City Police Department – other than the actions of individual officers – that caused an alleged deprivation of her constitutional rights.  For example, Plaintiff contends that Burgess's testimony that he arrested Plaintiff based on his investigation of verbal complaints, and that he could not confirm that he conducted a photo array at the precinct, demonstrates the existence of Police Department "policies" that allow arrests based solely on a verbal complaint and permit officers to conduct an identification of a suspect pursuant to a photo array "anywhere."  Plaintiff has not shown that such practices were pursuant to a formal policy or were "so widespread as to imply the constructive acquiescence of policymaking officials."  Praprotnik, 485 U.S. at 127.  Nor has she identified any failure of supervision, let alone a policymaker's deliberate indifference to obvious unconstitutional conduct.  Amnesty Am., 361 F.3d at 129.

Therefore, the court grants summary judgment to Defendants on these claims.

### 2. Municipal Liability for Strip Searches at Rikers Island in December 2000

Plaintiff cannot prevail on this claim, because regardless of whether she was subjected to any unconstitutional searches by individual officers at Rikers Island in 2000, she has provided no evidence of an unconstitutional policy or custom at the time of the alleged violation. Plaintiff has provided excerpts from the Correction Department's policies on searches of new inmates that did not take effect until July 23, 2002. (2003 Compl. ¶¶ 47; Gilliam Decl. Ex. HH.) The constitutionality of a policy that was not in effect at the time of the alleged violations is not properly before this court. Moreover, Plaintiff has provided no evidence of a policymaker's deliberate indifference to searches conducted in a manner contrary to department policies. She merely asserts in her Memorandum in Opposition that "there is a need for better supervision of correction officers to ensure that inmates are not subjected to unwarranted vaginal and body cavity searches." (Pl. Mem. Opp. 21.) Because Petitioner has provided no evidence in support of her allegations of municipal liability arising out of the searches of Plaintiff at Rikers Island in 2000, summary judgment on this claim is granted to Defendants.

### C. State-law Claims

Plaintiff has alleged numerous state law claims against the City of New York and Burgess. However, Plaintiff has not pled compliance with New York's notice of claim requirement, which applies to state-law claims brought in federal court. Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999) (citing Felder v. Casey, 487 U.S. 131, 151 (1988)). Under New York law, a notice of claim is a "condition precedent" to commencing a tort action against a municipality, Clayton Indust., Inc. v. City of Newburgh, 17 A.D. 3d 309, 310 (2d Dep't 2005), and must be served within ninety days of when the claim accrued, N.Y. Gen. Mun. Law §§ 50-e, 50-i (McKinney 2007). Notice of claim requirements are strictly

construed, and failure to comply with the requirements typically results in dismissal due to failure to state a cause of action.  Hardy, 164 F.3d at 793.  Moreover, a Plaintiff is required to plead that a notice of claim has been served.  Id. (citing cases).  Plaintiff's Complaints fail to allege that Plaintiff served a notice of claim on the City.  Therefore, her state-law tort claims against the City are dismissed.[13]

      As for the state-law claims against Burgess, the court grants summary judgment to Defendants on Plaintiff's false arrest and malicious prosecution claims for the reasons discussed above.  As for the remaining state-law claims, which allege assault and battery and intentional infliction of emotional distress, a notice of claim is not required when the claim alleges injuries resulting from intentional wrongdoing or recklessness, misconduct for which the City has no obligation to indemnify an employee.  See, e.g., Jean-Laurent v. Hennessy, No. 05-CV-1155 (JFB) (LB), 2008 WL 3049875, at *19 (E.D.N.Y. Aug. 1, 2008) (citing cases); N.Y. Gen. Mun. Law § 50-k (McKinney 2007) (describing obligation to indemnify municipal employee for conduct arising within scope of employment as long as employee not in violation of agency rules and injury not caused by intentional wrongdoing or recklessness).  If Burgess were found liable for of civil assault and battery, or intentional infliction of emotional distress, the city would not be required to indemnify him.  See id.  The court therefore considers on the merits Plaintiff's intentional tort claims against Burgess and concludes that they do not survive summary judgment.

_____

[13] Moreover, this court lacks jurisdiction to extend the time to serve a notice of claim or to grant permission to file a late notice of claim; N.Y. Gen. Mun. Law § 50(e)(7) (McKinney 2007) ("All applications under this section [to extend time for a notice of claim] shall be made to the supreme court or to the county court."); Olsen v. County of Nassau, No. 05-CV-3623(ETB), 2008 WL 4838705, at *3 (E.D.N.Y. Nov. 4, 2008) (citing cases).

### 1. Assault and Battery

Plaintiff alleges that Burgess committed assault and battery on her in violation of state law.  (2005 Compl. ¶¶ 12, 13; 2003 Compl. ¶ 50 (alleging "trespass on the person of the plaintiff").)  Under New York law, to succeed in an assault action, a plaintiff must establish that a defendant "intentional[ly] plac[ed] . . .  another person in fear of imminent harmful or offensive contact."  United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993).  On a civil battery claim, a plaintiff must establish that a defendant made "bodily contact, that the contact was offensive, and that [Burgess] intended to make the contact."  Nimely v. City of New York, 414 F.3d 381, 391 (2d Cir. 2005) (quoting Laurie Marie M. v. Jeffrey T.M., 159 A.D.2d 52, 55 (2d Dep't 1990)).  An assault and battery occurs "when a person is placed in imminent apprehension of harmful or offensive bodily contact and there is an actual use of force."  Cohen v. Davis, 926 F. Supp. 399, 402 (S.D.N.Y. 1996) (citing 6A N.Y. Jur. 2d Assault § 1).

To prevail on an assault and battery claim against law enforcement officers, a plaintiff must prove that the officer's conduct was "not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties."  Nimely, 414 F.3d at 391.  Under New York law, a police officer "may use physical force when and to the extent he or she reasonably believes necessary to effect the arrest" of a person "whom he or she reasonably believes to have committed an offense."  N.Y. Penal Law § 35.30(1) (McKinney 2007).  Under New York law, there can be no claim for assault or battery against an arresting officer where "the record is devoid of any evidence that the force used to make the arrests was excessive."  Marrero v. City of New York, 824 N.Y.S.2d 228, 230 (1st Dep't 2006); Akande v. City of New York, 713 N.Y.S.2d 341, 343 (1st Dep't 2000) ("There having been

probable cause for the arrest, the cause of action for battery was also properly dismissed without submission to the jury absent any evidence that the force used to effect the arrest was excessive.")

Plaintiff has not pointed to any evidence suggesting that the use of handcuffs following her arrests constituted an excessive or unreasonable use of force. Therefore, summary judgment is granted to Defendants.

### 2. Intentional Infliction of Emotional Distress

Plaintiff alleges a claim of intentional infliction of emotional distress against Burgess. To state a claim for intentional infliction of emotional distress, a plaintiff must allege conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. Am. Home Prod. Corp., 58 N.Y.2d 293, 303 (1983). A claim of intentional infliction of emotional distress has four elements: "i) extreme and outrageous conduct; ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; iii) a causal connection between the conduct and injury; and iv) severe emotional distress." Howell v. New York Post. Co., Inc., 81 N.Y.2d 115, 121 (1993). The requirements of the rule are "rigorous, and difficult to satisfy." Id. Of all of the claims for intentional infliction of emotional distress considered by the New York Court of Appeals, "every one has failed because the alleged conduct was not sufficiently outrageous." Id. (citations omitted). Those "few claims" that have been upheld by the Appellate Division have been "supported by allegations detailing a longstanding campaign of deliberate, systematic, and malicious harassment of the plaintiff." Seltzer v. Bayer, 272 A.D. 2d 263, 264 (1st Dep't 2000) (holding that allegations that defendant dumped cement on sidewalk in front of plaintiff's house, tossed lighted cigarettes into plaintiff's

backyard, threw eggs on his front steps, and threatened to paint a swastika on his house were insufficient to support a cause of action for intentional infliction of emotional distress).

Plaintiff has provided no evidence of, or has even alleged, any extreme or outrageous conduct on the part of Burgess.  Therefore, summary judgment is granted to Defendants.

**IV.    Conclusion**

For the foregoing reasons, summary judgment is granted to Defendants on all claims. The Clerk of the Court is ordered to close both cases.

SO ORDERED.

    _/s/ Nicholas G. Garaufis___

Dated: Brooklyn, New York           NICHOLAS G. GARAUFIS
      December 5, 2008           United States District Judge